IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:15-CR-446 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| TERRENCE JOSEPH McNEIL, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT McNEIL'S MOTION TO DISMISS

Now comes the United States of America, by and through its counsel, Carole S. Rendon,

United States Attorney, and Christos N. Georgalis and Michelle M. Baeppler, Assistant United

States Attorneys, and hereby responds in opposition to Defendant's Motion to Dismiss

(hereinafter, the "Motion"). (R. 37, Motion). The government respectfully requests that this

Honorable Court deny Defendant's Motion seeking to dismiss the Superseding Indictment

because the charging instrument is legally sufficient and alleges an ample factual basis to support

each charged offense.

For these reasons, Defendant's Motion should be denied without a hearing.

I.    PROCEDURAL HISTORY

On November 12, 2015, Defendant Terrence Joseph McNeil (hereinafter, "Defendant") was arrested on a federal criminal complaint for soliciting a crime of violence in violation of Title 18, United States Code, Section 373. (R. 1, Complaint Affidavit, PageID 3). On November 16, 2015, Defendant waived a detention hearing and was ordered detained by Magistrate Judge Kathleen B. Burke. (R. 5, Waiver, PageID 30). On December 8, 2015, a federal grand jury charged Defendant in a six-count Indictment, alleging three counts of communicating a threat in interstate commerce, in violation of 18 U.S.C. § 875(c), and three counts of soliciting a crime of violence, in violation of 18 U.S.C. § 373, and aiding and abetting such crimes. (R. 7, Indictment, PageID 32–40).

On June 29, 2015, this Court referred Defendant to the Bureau of Prisons for a psychiatric/psychological evaluation to determine whether Defendant was competent to stand trial and to understand the nature and consequences of the proceeding against him. (R. 26, Order, PageID 132). Pending the final results of Defendant's evaluation, on October 13, 2016, a federal grand jury returned a Superseding Indictment against Defendant, charging him with fifteen counts of violating 18 U.S.C. § 875(c), 18 U.S.C. § 373, as well as additional violations of publicizing restricted personal information, in violation of 18 U.S.C. § 119, and aiding and abetting such crimes. (R. 30, Superseding Indictment, PageID 188-203).

On October 18, 2016, this Court held a hearing to address Defendant's competency evaluation, the Superseding Indictment, and other pretrial matters. At the hearing, this Court reviewed the competency report prepared by Robert Johnson, Ph.D, "that concluded that [Defendant] [was] competent to stand trial." (R. 34, October 18, 2016 Tr., PageID 221). Neither party challenged the report. (Id.)

Defendant's Motion to Dismiss was filed on December 8, 2016.  (R. 37, Motion).

II.     FACTUAL BACKGROUND

The underlying facts of this matter are set forth in the criminal complaint affidavit (R. 1, Complaint Affidavit, PageID 2–25) as well as the Superseding Indictment (R. 30, Superseding Indictment, PageID 188 - 203).  In short, Defendant declared his support of the foreign terrorist organization, the Islamic State, and used his social media accounts to solicit the murder of, threaten the lives of, and publicize the personal information belonging to, scores of U.S. military service men and women.  As provided in the affidavit, "[o]n June 12, 2015, McNeil declared his support of ISIS, also referred to as ISIL, in a Tumblr posting on the internet.  McNeil posted a response to an anonymous user's question 'If U [sic] support ISIS just admit it coward.'  McNeil responded, 'lmao I don't support Egyptian idols if you mean the Islamic State I have stated many times that I do support them.'"

The conduct relating to the specific Counts in the Superseding Indictment arises from five specific social media posts Defendant made in September and October 2015, though, as discussed below, all of Defendant's conduct, both online and offline, provide circumstances strongly corroborative of his intent to solicit the murder of the U.S. servicemen and women, as well as his intent to threaten, intimidate, and incite/facilitate crimes against them.

Counts 1 through 3 relate to a September 4, 2015 Tumblr post, which is described in the Superseding Indictment as follows:

> On or about September 24, 2015, Defendant posted on his Tumblr account a file that displayed a banner titled, "Islamic State Hacking Division," stretched across the background of the black flag commonly used by ISIL and its supporters. Beneath the banner was written, "Target:  United States Military" and "Leak: Addresses of 100 US Military Personnel."  The file type was a .gif file, which allowed multiple still images to be looped in one file, with a timed delay between each image being displayed.  The file was publically available.

3

The text of the first image read, in part, "O Kuffar in America, O you who worship the cross, O You crusaders that fight the Islamic State, we say to you: 'DIE IN YOUR RAGE,' die in your rage because with the grace of Allah, The Islamic State Hacking Division (ISHD) has hacked several military servers, databases and emails and with all this access we have successfully obtained personal information related to military personnel in the United States Air Force, NAVY & Army. . . . [W]e have decided to leak 100 addresses so that our brothers residing in America can deal with you."

The text of the first image continued: "O Brothers in America, know that the jihad against the crusaders is not limited to the lands of the Khilafah, it is a world-wide jihad and their war is not just a war against the Islamic State, it is a war against Islam. . . . Know that it is wajib for you to kill these kuffar! and now we have made it easy for you by giving you addresses, all you need to do is take the final step, so what are you waiting for? Kill them in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking that they are safe. . . ."

The file then looped through several dozen photographs of United States military personnel, along with their respective names, purported home addresses, and military branches. Several of the photographs contained pictures of the military personnel holding infants or young children.

The final image of the loop contained a picture of a handgun and a knife with text that read: ". . . and kill them wherever you find them . . ."

(R. 30, Superseding Indictment, PageID 190-191).

Counts 4 through 9 relate to two of Defendant's Twitter posts on September 29, 2015,

which are described in the Superseding Indictment as follows:

On or about September 29, 2015, Defendant posted on his Twitter account, "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . .," which included the photographs of two United States military personnel, A.B. and W.T., along with their respective names, military divisions, and purported home addresses. The post was publically available.

On or about September 29, 2015, Defendant posted on his Twitter account, "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . .," which included the photograph of a United States military service member, N.S., alongside two young children, in addition to the military service member's name, military division, and purported home address. The post was publically available.

(R. 30, Superseding Indictment, PageID 191-192).

Counts 10 through 15 relate to Defendant's Twitter and Tumblr posts on October 3, 2015,

which are described in the Superseding Indictment as follows:

> On or about October 3, 2015, Defendant posted on his Twitter account, "Released – Address of the US Navy Seal [R.O.] who killed Sheikh Osama Bin Laden R.A. - #GoForth #RunRobertRun." The post was publically available. Defendant included in his post an embedded link that when clicked revealed the following:

> At the top of the page, the link stated "Breaking News" and claimed to provide ". . . the address of the US Navy Seal who killed Sheikh Osama Bin Laden R.A." Beneath the text was listed R.O.'s purported home address and a link to R.O.'s purported photograph.

> Defendant's link further stated that R.O "is a mummy's boy who has been trying to hide yet still lives with his father . . . and mother. . . . In between going around America to conferences boasting at how his 'claim to fame' is killing Sheikh Osama Bin Laden R.A. . . . I am posting the address to brothers & to Al Qaeda in the U.S as a number one target."

> On or about October 3, 2015, Defendant posted the content regarding R.O. and his purported home address and photograph from the embedded link described above onto Defendant's Tumblr page. The post was publically available.

> Defendant added the statement, "don't let this kafir sleep peacefully," to his Tumblr post.

(R. 30, Superseding Indictment, PageID 192).

Several of Defendant's online statements posted both before and after the specific

communications set forth in Counts 1 through 15 of the Superseding Indictment are identified in

the affidavit and Superseding Indictment. For instance, the Superseding Indictment provides:

> On or about May 11, 2014, Defendant posted, "I can't wait for another 9/11, Boston bombing, or Sandy Hook!!!"

> On or about May 12, 2014, Defendant posted, "I would gladly take part in an attack on this murderous regime and the poeple [sic]."

> On or about May 12, 2014, Defendant posted, "I'll be proud when I sled [sic] american blood."

> On or about May 14, 2014, Defendant posted, "Somebody should park a car bomb in front of a church, school, or mall."

On or about July 20, 2014, Defendant posted, "13 Israeli soldiers killed today, if that's not cause for celebration I don't know what is."

On or about February 3, 2015, Defendant posted, "This is what happens when you bomb women and children and get caught. Alhumdullilah I was worried for a while they might let that murderer go." Defendant attached to his post three pictures of a Jordanian pilot who was burned to death by ISIL fighters. The pictures were of the pilot before, during, and after his death, showing the pilot engulfed in flames.

On or about April 21, 2015, Defendant posted, "No American citizen is safe, fisabilillah they are all valid target [sic]. Until our brothers and sisters are free from imprisonment, harassment, torture, bombs, and bullets American will bleed inshallah."

On or about July 7, 2015, Defendant posted, "Too many homicidal thoughts."

On or about July 16, 2015, Defendant posted, "I just heard the news Allahu Akbar!!!! May Allah (SWT) accept our brother Muhammad Youssef Abdulazeez." Defendant's post referred to the events of July 16, 2015, where Muhammad Youssef Abdulazeez opened fire on two military installations located in Chattanooga, Tennessee. Four Marines and one Navy sailor were killed, and Abdulazeez was killed by authorities.

(R. 30, Superseding Indictment, PageID 189-190). These online statements represent a miniscule fraction of the relevant statements and posts Defendant made online, all of which provide circumstances strongly corroborative of his intent to solicit the murder of the U.S. servicemen and women, as well as his intent to threaten, intimidate, and incite/facilitate crimes against them. These additional statements include Islamic State and other foreign terrorist and Islamic extremist organizations' propaganda and materials in the form of videos, images, publications, and quotes. The government intends to offer this evidence, among other things, at Defendant's trial.

III.     ANALYSIS

A.     Legal Standard

Federal Rule of Criminal Procedure 7(c)(1) requires that "[t]he indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . ."  It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such a statement.  Id.  An indictment complies with this rule, and thus the Fifth and Sixth Amendments of the Constitution, when it: "(1) contains the elements of the offense(s) charged; (2) fairly informs a defendant of the charge(s) against which he must defend; and (3) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense(s)."  United States v. Titterington, 374 F.3d 453, 456 (6th Cir. 2004) (quoting  Hamling v. United States, 418 U.S. 87, 117 (1974)); see also United States v. Anderson, 605 F.3d 404, 411 (6th Cir. 2010);  United States v. Abdi, 498 F. Supp. 2d 1048, 1054-55 (S.D. Ohio 2007).

"[I]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"  Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Anderson, 605 F.3d at 412 ("the indictment need only set forth elements that, if proven, constitute a violation of the relevant statute.") (emphasis in original) (citing Hamling, 418 U.S. at 117); see also United States v. Collis, 128 F.3d 313, 317 (6th Cir. 1997).  However, "[w]here guilt depends so crucially upon such a specific identification of fact, [courts] have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."  Hamling, 418 U.S. at 118 (quoting Russell v. United States, 369 U.S. 749, 764(1962)).

Federal Rule of Criminal Procedure 12(b)(2) provides that a defendant may move to dismiss an indictment for failure to state an offense, and that appears to be the basis for Defendant's Motion addressed herein.    In reviewing a motion to dismiss, the court should accept as true the specific factual allegations in the indictment.  Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n. 16 (1952).  Further, the indictment "must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications."  United States v. McAuliffe, 490 F.3d 526, 531 (6th Cir. 2007) (citing United States v. Reed, 77 F.3d 139, 140 n. 1 (6th Cir. 1996) (en banc)).  An indictment is to be "construed liberally in favor of its sufficiency."  Id. (citing United States v. Davis, 306 F.3d 398, 411 (6th Cir. 2002)).

Taking as true the allegations in the Superseding Indictment and evaluating those allegations in accordance with the authorities described above, Defendant's Motion must be denied, as the Superseding Indictment: (1) contains all the elements of the offenses charged; (2) fairly informs Defendant of the charges that he must defend; and (3) enables him to plead acquittal or double jeopardy to bar future prosecutions for the same offenses.  For these reasons, Defendant's Motion should be denied without a hearing.

B.    The Statutes Charged And Their Elements

1.    Communicating Threats In Interstate Commerce – Counts 1, 4, 7, 10, 13

The Superseding Indictment charges five counts of communicating threats in interstate commerce.  Section 875(c) prohibits individuals from "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another."

Counts 1, 4, 7, 10, and 13 also allege violations of 18 U.S.C. § 2 for aiding and abetting said crimes. To establish a violation of 18 U.S.C. § 875(c), the government must prove the following three elements: (a) The Defendant knowingly sent a message in interstate and foreign commerce; (b) Containing a true threat to injure the person of another; and (c) With intent to communicate the threatening message.

The Supreme Court recently addressed this statute's intent requirement. In <u>Elonis v. United States</u>, 135 S. Ct. 2001 (June 1, 2015), the Court held that Section 875(c) does not apply to negligent conduct. Rather, Section 875(c) applies where there is proof that the defendant was aware of the threatening nature of the communication, or, possibly, that he recklessly disregarded the fact that the communication was threatening. Under <u>Elonis</u>, the intent element of Section 875(c) is satisfied by showing that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." <u>Elonis</u>, 135 S. Ct. at 2012. While a defendant need not communicate the threat directly to its target, the threat must be designed to have some kind of effect on some other person through intimidation. <u>See</u> <u>United States v. Jeffries</u>, 692 F.3d 473 (6th Cir. 2012). This Circuit has noted that threats intended to further a broader "political objective" also fall within this statute. <u>United States v. Alkhabaz</u>, 104 F.3d 1492, 1495 (6th Cir. 1997); <u>accord</u> <u>United States v. Kelner</u>, 534 F.2d 1020 (2d Cir. 1976).

2. <u>Soliciting A Crime Of Violence – Counts 2, 5, 8, 11, and 14</u>

Defendant is charged with five counts of soliciting a crime of violence. In essence, 18 U.S.C. § 373(a) prohibits endeavoring to persuade another person to engage in felonious conduct involving the use of violence or the threat of violence against another person or against property, in violation of federal law. The statute provides:

9

(a)     Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

18 U.S.C. § 373(a).  Congress intended that the statutory phrase "otherwise endeavors to persuade" be construed broadly to cover any situation "where a person seriously seeks to persuade another person to engage in criminal conduct."  United States v. Buckalew, 859 F. 2d 1052, 1054 (1st Cir. 1988) (Breyer, J.) (quoting S. Rep. No. 307, 97th Cong., 1st Sess. 183-84 (1982)).  Defendant is also charged with aiding and abetting this crime in violation of 18 U.S.C. § 2.  For purposes of § 373, the felonious conduct that was solicited must be in violation of federal law.  In this case, such felonious conduct was in violation of 18 U.S.C. § 1114 (Prohibiting the Killing of Members of the Uniformed Services) and 18 U.S.C. § 1389 (Prohibiting the Assault and Battery of U.S. Servicemen,).

In the Sixth Circuit, "[t]o establish a solicitation violation, the government must prove that the defendant intended that 'another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicit[ed], command[ed], induce[d], or otherwise endeavor[ed] to persuade such other person to engage in such conduct.'"  United States v. Cope, 283 Fed. Appx. 384, 2008 WL 2630366 at *4 (6th Cir. 2008); accord United States v. Rahman, 198 F.3d 88, 125 (2d Cir. 1999).  The government need not establish the identity of the solicited person in order to charge a violation of this statute.  See United States v.

White, 698 F.3d 1005, 1016 (7th Cir. 2012) (conviction upheld where the defendant broadcast his solicitation electronically "to reach as many white supremacist readers as possible so that someone could kill or harm" the victim). The government must, however, prove by "strongly corroborative" circumstances that the defendant intended another person to engage in the violent conduct prohibited under the solicitation statute. See Cope, 283 Fed. Appx. 384, 2008 WL 2630366 at *4.

When the federal offense of solicitation was enacted, Congress recognized a number of non-exclusive examples of strongly corroborative circumstances that would often be highly probative of intent:

(a)    The fact that defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense;

(b)    The fact that defendant threatened harm or other detriment to the person solicited if he would not commit the offense;

(c)    The fact that defendant repeatedly solicited the commission of the offense, held forth at length in soliciting the commission of the offense, or made express protestations of seriousness in soliciting the commission of the offense;

(d)    The fact that defendant believed or was aware that the person solicited had previously committed similar offenses;

(e)    The fact that defendant acquired weapons, tools, or information suited for use by the person solicited in the commission of the offense, or made other apparent preparations for the commission of the offense by the person solicited.

Criminal Code Reform Act of 1981, Report of the Committee on the Judiciary, United States Senate, S.Rep.No. 307, 97th Cong., 1st Sess., at p.183 (1981); See also United States v. Talley, 164 F.3d 989, 996 (6th Cir. 1999) (quoting United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989) and United States v. Gabriel, 810 F.2d 627, 635 (7th Cir. 1987)).

Two key opinions from the Seventh Circuit arising out of the United States v. White case provide a compelling framework for analyzing Defendant's conduct in this case. Both opinions

arose out of the same set of facts, though were issued at different stages of the <u>White</u> litigation. Each opinion is addressed in turn.

The first opinion, <u>United States v. White</u>, 610 F.3d 956 (7th Cir. 2010) (hereinafter, "<u>White I</u>") reversed the district court's decision to dismiss the superseding indictment as conduct protected by the First Amendment. <u>Id.</u> at 957. The Seventh Circuit held that the superseding indictment, which charged one count of 18 U.S.C. § 373, was legally sufficient to state an offense. In <u>White I</u>, the Seventh Circuit stated that defendant, William White, created and maintained the website Overthrow.com, which was associated with the American National Socialist Workers Party, a white supremacist organization. <u>Id.</u> White used the website to advocate that violence be perpetrated on the "enemies" of white supremacy and praised attacks on them. <u>Id.</u>

A repeated topic on White's website related to Matthew Hale, the leader of a white supremacist organization, who was charged with soliciting the murder of a federal district court judge in January 2003. <u>Id.</u> Hale was convicted by a jury and sentenced to 480 months' imprisonment. <u>Id.</u> Related to the Hale trial, White wrote on his website that "everyone associated with the Matt Hale trial has deserved assassination for a long time." <u>Id.</u> White also wrote a posting naming individuals involved or related in some way to Hale's conviction, such as federal agents and prosecutors and other citizens advocating for Hale's arrest, stating that any of them may be the next targets of an "unknown nationalist assassin." <u>Id.</u> White, however, did not publish their personal information in that post because he felt "there is so great a potential for action." <u>Id.</u>

White did, however, later post personal information about the foreperson of the jury in the Hale trial.  Id.  The posting was titled "The Juror Who Convicted Matt Hale," identified the juror by name, featured a color photograph of the juror, and stated:

> Gay anti-racist [juror's name] was a juror who played a key role in convicting Matt Hale.  Born [date], [he/she] lives at [address] with [his/her] gay black lover and [his/her] cat [name].  [His/Her] phone number is [phone number], cell phone [phone number], and [his/her] office is [phone number].

Id. at 957-58.  White posted another entry the following day with all of the same information.  Id. at 958.  The Seventh Circuit noted that White's website was an active website at the time of the posting, and that a reader of the above posting could also access other posts where White had called for violence against "anti-racists."  Id. at 957.  White moved to dismiss the superseding indictment on the grounds that the charge violated the First Amendment, and the district court granted the motion.  Id. at 958.

In White I, the Seventh Circuit reversed the district court, holding that the White superseding indictment was legally sufficient.  Id. at 959.   The superseding indictment tracked the language of § 373, and provided corroborating circumstances of White's intent.  Id.  The Seventh Circuit also addressed, and denied, White's First Amendment argument.

In the second Seventh Circuit opinion, United States v. White, 698 F.3d 1005 (7th Cir. 2010) (hereinafter "White II"), the appellate court reversed the district court's granting of White's Rule 29 motion after he had been tried and convicted by a jury for solicitation.  Id. at 1008.  The Seventh Circuit concluded that "based on the contents of the website, its readership, and other contextual factors, White intentionally solicited a violent crime against [the juror] by posting [the juror's] personal information on his website."  Id.

In describing the background to White II, the Seventh Circuit discussed several of the postings described in White I, but also discussed many of the other of White's postings that were

made part of the record at trial. For instance, White also posted a description of an email that was circulating on the internet that contained the personal identification information of the FBI agents and prosecutors who prosecuted Hale, noting that they might be "the next targets of the unknown nationalist assassin who killed the family of Chicago Judge Joan Lefkow." Id. at 1009. White also published on his website the address of Elie Wiesel, stating "In Case Anyone Was Looking For Him." Id.

White made many other postings praising those who committed violence against "enemies" of White's cause and advocating violence against those he disliked. Id. These postings were prelude to the conduct that got White indicted for criminal solicitation, as described in White I. Id.

At trial, the government offered White's postings, called agents to testify about forensic searches performed on White's computer, and presented the juror victim as a witness. Id. at 1010-11. The juror testified that while he did receive harassing text messages after White's posting, he was not personally threatened, stalked, or physically harmed after White's post. Id. at 1011.

In reversing the district court's ruling on White's Rule 29 motion, the Seventh Circuit held that "[w]hether White's post was a criminal solicitation depended on context, and the government provided ample evidence of such context from which a rational jury could have concluded that the post was an invitation to others to harm [the juror], though fortunately no one accepted the invitation." Id. at 1013. The Court held that White's post attributed to the victim characteristics intended to make the victim loathed by White's neo-Nazi website readers, and while he refrained from publishing personal information of others given the potential for action, White expressly published the juror's photo, home address, and phone numbers. Id. at 1014.

The Seventh Circuit also reviewed in detail the context created by White's previous posts, and noted White's "audience," stating "[r]eaders of Overthrow.com were not casual Web browsers, but extremists molded into a community by the internet—loyal and avid readers who, whether or not they remember every specific solicitation to assassination, knew that Overthrow.com identified hateful enemies who should be assassinated."  Id. at 1014-15.

The Seventh Circuit summarily addressed a non-exclusive, non-conclusive list of strongly corroborative circumstances surrounding White's intent to urge the killing of the juror: whether  defendant (1) offered or promised payment or some other benefit; (2) threatened to punish or harm the solicitee for failing to commit the offense; (3) repeatedly solicited the commission of the offense or expressly stated his seriousness; (4) knew or believed the solicitee had previously committed a similar offense; or (5) acquired weapons, tools or information, or made other preparations, suited for use by the solicitee.  Id. at 1015.  The Court held that "[s]uch circumstantial evidence, much of which [was] already recounted above, exists here."  Id.

Finally, the Seventh Circuit stated that "[t]hough the government did not present a specific 'solicitee,' it was unnecessary to do so given the very nature of the solicitation—an electronic broadcast which, a reasonable jury could conclude, was specifically designed to reach as many white supremacist readers as possible so that *someone* could kill or harm [the juror].  18 U.S.C. 373 requires proof of intent 'that another person' commit the felony, and White's desire for *any* reader to respond to his call satisfies this requirement."  Id. at 1016 (emphasis in original).

3.      Publicizing Restricted Personal Information – Counts 3, 6, 9, 12, and 15

Defendant is also charged in the Superseding Indictment with five violations of 18 U.S.C. §§ 119 and 2 for publicizing restricted personal information of individuals performing certain

official duties.  Title 18, United States Code, Section 119 provides the following:

(a) In General.  Whoever knowingly makes restricted personal information about a covered person, or a member of the immediate family of that covered person, publicly available-

(1) with the intent to threaten, intimidate, or incite the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person; or

(2) with the intent and knowledge that the restricted personal information will be used to threaten, intimidate, or facilitate the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person,

shall be fined under this title, imprisoned not more than 5 years, or both.

The term "restricted personal information" means, with respect to an individual, the Social Security number, the home address, home phone number, mobile phone number, personal email, or home fax number of, and identifiable to, that individual.  18 U.S.C. § 119(b)(1).  The term "covered person" means:

(A) an individual designated in section 1114; (B) a grand or petit juror, witness, or other officer in or of, any court of the United States, or an officer who may be, or was, serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate; (C) an informant or witness in a Federal criminal investigation or prosecution; or (D) a State or local officer or employee whose restricted personal information is made publicly available because of the participation in, or assistance provided to, a Federal criminal investigation by that officer or employee.

18 U.S.C. § 119(b)(2).  The elements of 18 U.S.C. § 119 are as follows:

(1)     The defendant knowingly made restricted personal information publically available

(2)     The information was about a covered person, or a member of the immediate family of that covered person

(3)     This was done with:

(a)     the intent to threaten, intimidate, or incite

(b)     the intent and knowledge that the restricted personal information would be used to threaten, intimidate, or facilitate, the commission of a crime of violence against that person.

See 18 U.S.C. §119.

C.      Argument

Defendant's Motion presents two main arguments: (1) the Superseding Indictment fails to state an offense because the solicitations, threats, and incitements were retweets or reblogs of prior existing solicitations, threats, and incitements; and (2) the individual Counts do not allege the elements of each violation. Defendant is wrong. And for the reasons provided below, his Motion should be denied without a hearing.

1.      Defendant Is Not Insulated From Liability Simply Because His Solicitations, Threats, And Incitements Were Retweets And Reblogs.

Defendant's first argument is that he somehow is immune from criminal liability where the charged solicitations, threats, and incitements were retweets and reblogs on social media. Defendant has been charged with declaring his support of the Islamic State, a foreign terrorist organization as stated in the Superseding Indictment (R. 30, Superseding Indictment, PageID 188), and using his social media accounts to solicit the murder of, threaten the lives of, and publicize the restricted personal information belonging to, scores of U.S. military service men and women.

The conduct relating to the specific Counts in the Superseding Indictment arises from five specific social media posts Defendant made in September and October 2015, though, as discussed above, all of Defendant's conduct, both online and offline, provides circumstances strongly corroborative of his intent to solicit the murder of the U.S. servicemen and women, as well as his intent to threaten, intimidate, and incite/facilitate crimes against them. The fact that Defendant re-posted, not once or twice, but in five separate instances, solicitations, threats, and

17

incitements originating from a third party terrorist organization does not shield him from criminal liability because he intended to adopt the messages and communicate them as his own, and/or he intended to aid and abet the Islamic State in an attempt to persuade another to commit the crime and threaten and incite.  See United States v. Stewart, 590 F.3d 93 (2d Cir. 2009) (affirming a conviction for soliciting crimes of violence, where the defendant disseminated a fatwah on behalf of imprisoned terrorist Abdel Rahman).  Notably, in Stewart, it was not relevant that defendant had merely relayed the words of a third party (Abdel Rahman) because, the court held, the statements amounted to speech integral to criminal conduct and defendant could be held liable for conveying such speech without any constitutional difficulty.  Id. at 115-16; see also United States v. Sattar, 272 F. Supp. 2d 348, 374 (S.D.N.Y. 2003).  In Sattar, the district court found the following:

> Sattar argues that the Indictment fails to allege conduct sufficient to establish a basis for the charge in Count Three [§ 373 solicitation].  In particular [Sattar] argues that the Indictment fails to specify the circumstances strongly corroborative of the required intent.  However, the overt acts in Count One that the Government intends to incorporate are sufficient.  The Indictment charges that Sattar, among other things, participated in drafting and disseminating a fatwah to be issued under Sheik Abdel Rahman's name that was entitled "Fatwah Mandating the Bloodshed of Israelis Everywhere" and that called on "brother scholars everywhere in the Muslim world to do their part and issue a unanimous fatwah that urges the Muslim nation to fight the Jews and to kill them wherever they are."  With the incorporation of Paragraph 21, Count Three will also allege that Sattar aided in issuing a statement from Sheikh Abdel Rahman renouncing the cease-fire [and thus resuming violence] between IG [Islamic Group] and the Egyptian government.  These specific acts are sufficient to support the allegation that Sattar solicited crimes of violence in violation of 18 U.S.C. § 373.

Satar, 272 F. Supp. at 374 (emphasis added).  Defendant's conduct in this case is strikingly similar.  Not only did Defendant issue statements, and aid and abet the issuance, in the form of solicitations, threats, and incitements from the Islamic State, like the call to violence statements Sattar issued from Sheikh Abdel Rahman in prison, but Defendant also issued his own

statements in posting the Islamic State's solicitation, threat, and incitement when Defendant stated: "don't let this kafir [referring to R.O.] sleep peacefully."

Moreover, the argument that Defendant did not himself modify any of these posts is simply untrue. As alleged in the Superseding Indictment, with respect to his October 3, 2015 Tumblr post soliciting the murder of, threatening, and inciting the commission of a crime against R.O., Defendant added the statement, "don't let this kafir sleep peacefully." (R. 30, Superseding Indictment, PageID 192, 201-203). Further, it is simply false that the Superseding Indictment does not allege any statements from Defendant himself. Paragraph 5 and its subparagraphs in the Superseding Indictment, which were incorporated into each and every Count charged, set forth numerous statements Defendant originated that establish his intent to solicit the murder of, threaten, and incite a commission of a crime against scores of U.S. military servicemen and women. For instance, paragraph 5 and its subparagraphs provides the following:

On or about May 11, 2014, Defendant posted, "I can't wait for another 9/11, Boston bombing, or Sandy Hook!!!"

On or about May 12, 2014, Defendant posted, "I would gladly take part in an attack on this murderous regime and the poeple [sic]."

On or about May 12, 2014, Defendant posted, "I'll be proud when I sled [sic] american blood."

On or about May 14, 2014, Defendant posted, "Somebody should park a car bomb in front of a church, school, or mall."

On or about July 20, 2014, Defendant posted, "13 Israeli soldiers killed today, if that's not cause for celebration I don't know what is."

On or about February 3, 2015, Defendant posted, "This is what happens when you bomb women and children and get caught. Alhumdullilah I was worried for a while they might let that murderer go." Defendant attached to his post three pictures of a Jordanian pilot who was burned to death by ISIL fighters. The pictures were of the pilot before, during, and after his death, showing the pilot engulfed in flames.

On or about April 21, 2015, Defendant posted, "No American citizen is safe, fisabilillah they are all valid target [sic]. Until our brothers and sisters are free from imprisonment, harassment, torture, bombs, and bullets American will bleed inshallah."

On or about July 7, 2015, Defendant posted, "Too many homicidal thoughts."

On or about July 16, 2015, Defendant posted, "I just heard the news Allahu Akbar!!!! May Allah (SWT) accept our brother Muhammad Youssef Abdulazeez." Defendant's post referred to the events of July 16, 2015, where Muhammad Youssef Abdulazeez opened fire on two military installations located in Chattanooga, Tennessee. Four Marines and one Navy sailor were killed, and Abdulazeez was killed by authorities.

(R. 30, Superseding Indictment, PageID 189-190). The statements in the Superseding Indictment are the words of, and thoughts and intent attributable to, Defendant. These online statements listed in the Superseding Indictment represent a fraction of the relevant statements and posts Defendant made online that the government intends to introduce at trial, all of which provide circumstances strongly corroborative of his intent to solicit the murder of the U.S. servicemen and women, as well as his intent to threaten, intimidate, and incite/facilitate crimes against them. Taking the specific factual allegations in the Superseding Indictment as true, and read as a whole, "construing those allegations in a practical sense with all the necessary implications," McAuliffe, 490 F.3d at 531, the allegations set forth in the Superseding Indictment more than satisfies what is necessary under Fed. R. Crim. P. 7(c)(1) and 12(b)(2).

Accordingly, not only is Defendant's Motion legally unsound, but it incorrectly presents the facts as alleged, and assumed to be true, in the Superseding Indictment itself. Defendant has failed to overcome the presumption that an indictment should be "construed liberally in favor of its sufficiency." His Motion should be denied without a hearing.

2.      The Superseding Indictment Sets Forth All Of The Necessary Elements Of Each And Every Crime Charged.

Defendant's second argument is that the Superseding Indictment should be dismissed because of a perceived deficiency in alleging the elements of each crime charged.  In effect, Defendant makes a facial, albeit conclusory, attack on the posts themselves, arguing that the solicitations are not really solicitations, the threats are not really threats, and the incitements are not really incitements.  Defendant is plainly wrong.  All of the Counts clearly satisfy the well-established pleading requirements in this Circuit.  The Counts are all pleaded in the language of their corresponding statute and provide sufficient particulars to give notice to Defendant of the charges against him and to permit him to plead double jeopardy, of which there is none, if necessary.

With respect to all of the solicitation counts (Counts 2, 5, 8, 11, and 14), each individual charge lists the specific crimes of violence allegedly solicited, namely violations of 18 U.S.C. § 1114 (Prohibiting the Killing of Members of the Uniformed Services) and 18 U.S.C. § 1389 (Prohibiting the Assault and Battery of U.S. Servicemen).  Circumstances strongly corroborative of his intent are also pleaded in the solicitation Counts of the Superseding Indictment not only through the repetitive nature of his solicitations, but also Defendant's statements made in previous posts as alleged in paragraph 5 and its sub-paragraphs in the Superseding Indictment. Each one of Defendant's postings is addressed in turn below.[1]

---

[1] The government intends to file the exhibits to this response under seal, having received an order from this Court allowing it do so.  For purposes of this response in opposition, it is sufficient to set forth the names and labels of the exhibits that will be filed under seal.   They are as follows:

Exhibit A:  September 24, 2015 Tumblr Post (regarding Counts 1, 2, 3)

Exhibit B:  September 29, 2015 Twitter Image on A.B, W.T. (regarding Counts 4, 5, 6)

i.    <u>September 24, 2015 Tumblr Post – Counts 1, 2, and 3</u>

On September 24, 2015, Defendant posted on his Tumblr page a fifteen page .gif that

looped through the names, photographs, home addresses, and branches of the military of 100

U.S. servicemen and women with the directive to "[k]ill them in their own lands, behead them in

their own homes, stab them to death as they walk their streets thinking that they are safe . . . and

kill them where you find them."  (R. 30, Superseding Indictment, PageID 193-94).  Counts 1, 2,

and 3 provide, in pertinent part, the following:

<u>COUNT 1</u>
(September 24, 2015 Tumblr Threat in violation of 18 U.S.C. §§ 875(c) and 2)

On or about September 24, 2015, in the Northern District of Ohio, Eastern Division,
and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly and
willfully did transmit in interstate and foreign commerce from Akron, Ohio, to the
State of New York, and to other states and countries, a communication providing
the names, home addresses, photographs, and branches of the military of
approximately one-hundred United States servicemen and women to the followers,
and any viewers, of Defendant's Tumblr account, and the communication contained
threats to injure the approximately one-hundred United States servicemen and
women, including, among others, to "[k]ill them in their own lands, behead them
in their own homes, stab them to death as they walk their streets thinking that they
are safe. . .  and kill them wherever you find them."

All in violation of Title 18, United States Code, Sections 875(c) and 2.

<u>COUNT 2</u>
(September 24, 2015 Tumblr Solicitation in violation of 18 U.S.C. §§ 373(a) and
2)

On or about September 24, 2015, in the Northern District of Ohio, Eastern Division,
and elsewhere, Defendant TERRENCE JOSEPH McNEIL, with the intent that
other persons engage in conduct constituting a felony that has as an element the use
and attempted use of physical force against the person of another in violation of the

---

<u>Exhibit C</u>:  September 29, 2015 Twitter Image on N.S. (regarding Counts 7, 8, 9)

<u>Exhibit D</u>:  September 29, 2015 Twitter Posts re A.B., W.T., and N.S. (regarding Counts 4 – 9)

<u>Exhibit E</u>:  October 3, 2015 Twitter Post on R.O (regarding Counts 10, 11, 12)

<u>Exhibit F</u>:  October 3, 2015 Tumblr Post on R.O. (regarding Counts 13, 14, 15)

laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce, and endeavor to persuade such other persons to engage in such conduct, to wit: to kill and attempt to kill an officer and employee of the United States while such officer and employee was engaged in and on account of the performance of official duties; that is certain members of the United States uniformed services, in violation of Title 18, United States Code, Section 1114, and to knowingly assault and batter certain United States servicemen on account of the military service of the servicemen and status of the individuals as United States servicemen, in violation of Title 18, United States Code, Section 1389(a).

All in violation of Title 18, United States Code, Sections 373(a) and 2.

<u>COUNT 3</u>
(September 24, 2015 Tumblr Post in violation of 18 U.S.C. §§ 119 and 2)

On or about September 24, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly made restricted personal information about certain members of the United States uniformed services, individuals designated in Title 18, United States Code, Section 1114, publically available, with the intent to threaten, intimidate, and incite, and with knowledge that the restricted personal information would be used to threaten, intimidate, and facilitate, the commission of a crime of violence as defined in Title 18, United States Code, Section 16(a), specifically the crimes of violence set forth in Title 18, United States Code, Section 1114 and 1389(a), against said certain members of the United States uniformed services, by posting on Tumblr a communication providing restricted personal information of approximately one-hundred United States servicemen and women to the followers, and any viewers, of Defendant's Tumblr account, which communication provided to "[k]ill them in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking that they are safe. . . and kill them wherever you find them." All in violation of Title 18, United States Code, Sections 119 and 2.

(R. 30, Superseding Indictment, PageID 193-95).

Counts 1, 2, and 3 of the Superseding Indictment, and the incorporating paragraphs identified in each Count: (1) provide notice of the approximate dates on which Defendant violated each statute—"September 24, 2015"—as well as a date range of much of his overall conduct—"[f]rom at least on or about May 11, 2014, through on or about October 3, 2015"; (2) identifies Defendant as well as his victims—"approximately one-hundred United States servicemen and women"; (3) alleges that the scienter requirement was met as to each violation;

(4) identifies the type of solicitation, threat, intimidation/incitement/facilitation Defendant

intended; and (5) alleges specifies about each individual solicitation, threat, intimidation/

incitement/facilitation enumerated in the statute.

As to the specifics about the September 24, 2015 solicitation, threat, intimidation/

incitement/facilitation, the Superseding Indictment clearly sets out with sufficient specificity

why the post violates these three statutes. Defendant's communication "provid[ed] the names,

home addresses, photographs, and branches of the military of approximately one-hundred United

States servicemen and women to the followers, and any viewers, of Defendant's Tumblr

account." (R. 30, Superseding Indictment, PageID 193). Defendant's communication read, in

part:

> O Kuffar in America, O you who worship the cross, O You crusaders that fight the
> Islamic State, we say to you: 'DIE IN YOUR RAGE,' die in your rage because
> with the grace of Allah, The Islamic State Hacking Division (ISHD) has hacked
> several military servers, databases and emails and with all this access we have
> successfully obtained personal information related to military personnel in the
> United States Air Force, NAVY & Army. . . . [W]e have decided to leak 100
> addresses so that our brothers residing in America can deal with you.
>
> [ . . . ]
>
> O Brothers in America, know that the jihad against the crusaders is not limited to
> the lands of the Khilafah, it is a world-wide jihad and their war is not just a war
> against the Islamic State, it is a war against Islam. . . . Know that it is wajib for you
> to kill these kuffar! and now we have made it easy for you by giving you addresses,
> all you need to do is take the final step, so what are you waiting for? Kill them in
> their own lands, behead them in their own homes, stab them to death as they walk
> their streets thinking that they are safe. . . ."
>
> [ . . . ]
>
> The final image of the loop contained a picture of a handgun and a knife with text
> that read: ". . . and kill them wherever you find them . . ."

(R. 30, Superseding Indictment, PageID 190-191). It is difficult to conceive of a scenario where

these statements alone, ignoring all the other statements set forth in the Superseding Indictment

in paragraph 5, is not a solicitation, a threat, and an incitement/facilitation of a crime of violence intended as such by Defendant.

Defendant's solicitations are far more explicit than in the <u>White</u> case, and the context of Defendant's solicitations provide circumstances that even more strongly corroborate his intent. One critical difference is that Defendant's solicitations contained the directive to "[k]ill them in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking that they are safe. . . . and kill them wherever you find them" in the same communication where he provided the servicemen and women's personal information. Compared to White's provision of the juror's address, which required a reader to infer a solicitation based on previous postings, Defendant made no mistake about what he wanted done to the servicemen and servicewomen as well as how he wanted it done to them: beheading and stabbing.

As in <u>White II</u>, the context of Defendant's previous posts set forth in the Superseding Indictment further establish his intent. His postings on Facebook, Twitter, and Tumblr begin on May 11, 2014, when he posted, "I can't wait for another 9/11, Boston bombing, or Sandy Hook!!!" and built to the September 24, 2015 posting, September 29, 2015 postings, and the October 3, 2015 postings. Additional posts are described in detail above.

The non-exclusive, non-conclusive list of five circumstances described in <u>White II</u> also strongly corroborate Defendant's intent. First, an analysis of the September 24, 2015 posting on its face reveals that Defendant's solicitation promised benefit to his followers, *i.e.*, the benefits attendant to committing violent jihad under Islamist extremism doctrine: "O Brothers in America, know that the jihad against the crusaders is not limited to the lands of the Khilafah, it is a world-wide jihad and their war is not just a war against the Islamic State, it is a war against

Islam." (R. 30, Superseding Indictment, PageIF 191). Defendant's knowledge of such benefits were evidenced by his postings, *e.g.*, McNeil's July 16, 2015 post, "I just heard the news Allahu Akbar!!!! May Allah (SWT) accept our brother Muhammad Youssef Abdulazeez." (Id. at 190). Moreover, the September 24, 2015 was attributed to the "Islamic State Hacking Division." (Id.) A solicitee and Islamic State supporter carrying out the killing of the servicemen and women would receive the perceived benefit attendant to killing for the Islamic State.

Second, while Defendant may not have overtly threatened to harm the solicitees for failing to commit the offense, his posting stated that, "[k]now that it is wajib [necessary] for you to kill these kuffar! . . . what are you waiting for?" (Id. at 191). The solicitation is consistent with Defendant's communication of August 7, 2015: ". . . I feel like it's my duty to burn America." (Id. at PageID 190). Taken as true, as is required here, Defendant solicited that it is not only "necessary" to kill his victims, but it is a "duty" to do so.

Third, by their very nature, all of Defendant's postings—September 24, 2015, September 29, 2015, and October 3, 2015—were available to Defendant's followers as well as the public at large. They are communications that were, and could have been, reviewed repeatedly. Taken as a whole, the repeated nature of Defendant's charged communications, on five separate occasions, strongly corroborate his intent to solicit the murder of servicemen and women. Further, based on the face of the postings alone, it is clear that Defendant was serious about his solicitations, threats, and intimidations.

Fourth, several of Defendant's previous postings indicated Defendant's support for those who had committed violent acts against military type personnel, *i.e.*, his posting in support of the Chattanooga shooting, posting about the Jordanian pilot who was burned by ISIL fighters, and "celebrat[ing]" the death of 13 Israeli soldiers. (Id. at PageID 189-90).

Fifth, it is clear that Defendant's provision of information in the form of the names, photos, addresses, and branches of the military of the 100 servicemen and women strongly corroborates his intent to solicit their murders, indicates his awareness of the threatening nature of the communication, and further intimidates/incites/facilitates the commission of a crime against his victims.

For the same reasons provided above, the Superseding Indictment presents a sufficient basis to establish the elements of violations of 18 U.S.C. §§ 875, 119, and 2. The Motion as to Counts 1, 2, and 3, therefore, should be denied without a hearing.

   ii.  <u>September 29, 2015 Twitter Posts – Counts 4 through 9</u>

On September 29, 2015, in two separate postings, Defendant communicated on his Twitter page the names, photographs, home addresses, and branches of the military of three U.S. servicemen and women, identified in the Superseding Indictment as A.B., W.T., and N.S., with the directive "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . .," (R. 30, Superseding Indictment, PageID 191-92). Counts 4 through 9 provide, in pertinent part, the following:

COUNT 4
(September 29, 2015 Twitter Threat in violation of 18 U.S.C. §§ 875(c) and 2)

On or about September 29, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly and willfully did transmit in interstate and foreign commerce from Akron, Ohio, to the State of California, and to other states and countries, a communication providing the names, home addresses, and divisions of the military of A.B. and W.T. to the followers, and any viewers, of Defendant's Twitter account, and the communication contained a threat to injure A.B. and W.T., including "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . ."

All in violation of Title 18, United States Code, Sections 875(c) and 2.

## COUNT 5
(September 29, 2015 Twitter Solicitation in violation of 18 U.S.C. §§ 373(a) and 2)

On or about September 29, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, with the intent that other persons engage in conduct constituting a felony that has as an element the use and attempted use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce, and endeavor to persuade such other persons to engage in such conduct, to wit: to kill and attempt to kill officers and employees of the United States while such officers and employees were engaged in and on account of the performance of official duties; that is, A.B. and W.T., certain members of the United States uniformed services, in violation of Title 18, United States Code, Section 1114, and to knowingly assault and batter A.B. and W.T., United States servicemen, on account of the military service of the servicemen and status of the individuals as United States servicemen, in violation of Title 18, United States Code, Section 1389(a).

All in violation of Title 18, United States Code, Sections 373(a) and 2.

## COUNT 6
(September 29, 2015 Twitter Post in violation of 18 U.S.C. §§ 119 and 2)

On or about September 29, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly made restricted personal information about A.B. and W.T., individuals designated in Title 18, United States Code, Section 1114, publically available, with the intent to threaten, intimidate, and incite, and with knowledge that the restricted personal information would be used to threaten, intimidate, and facilitate, the commission of a crime of violence as defined in Title 18, United States Code, Section 16(a), specifically the crimes of violence set forth in Title 18, United States Code, Sections 1114 and 1389(a), against A.B. and W.T., by posting on Twitter a communication providing A.B. and W.T.'s restricted personal information to the followers, and any viewers, of Defendant's Twitter account, which communication provided "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . ."

All in violation of Title 18, United States Code, Sections 119 and 2.

## COUNT 7
(September 29, 2015 Twitter Threat in violation of 18 U.S.C. §§ 875(c) and 2)

On or about September 29, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly and willfully did transmit in interstate and foreign commerce from Akron, Ohio, to the State of California, and to other states and countries, a communication providing

the name, home address, and division of the military of N.S. to the followers, and any viewers, of Defendant's Twitter account, and the communication contained a threat to injure N.S., including "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . ."

All in violation of Title 18, United States Code, Sections 875(c) and 2.

COUNT 8

(September 29, 2015 Twitter Solicitation in violation of 18 U.S.C. §§ 373(a) and 2)

On or about September 29, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, with the intent that other persons engage in conduct constituting a felony that has as an element the use and attempted use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce, and endeavor to persuade such other persons to engage in such conduct, to wit: to kill and attempt to kill an officer and employee of the United States while such officer and employee was engaged in and on account of the performance of official duties; that is, N.S., a certain member of the United States uniformed services, in violation of Title 18, United States Code, Section 1114, and to knowingly assault and batter N.S., a United States serviceman, on account of the military service of the serviceman and status of the individual as a United States serviceman, in violation of Title 18, United States Code, Section 1389(a).

All in violation of Title 18, United States Code, Sections 373(a) and 2.

COUNT 9

(September 29, 2015 Twitter Post in violation of 18 U.S.C. §§ 119 and 2)

On or about September 29, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly made restricted personal information about N.S., an individual designated in Title 18, United States Code, Section 1114, publically available, with the intent to threaten, intimidate, and incite, and with knowledge that the restricted personal information would be used to threaten, intimidate, and facilitate, the commission of a crime of violence as defined in Title 18, United States Code, Section 16(a), specifically the crimes of violence set forth in Title 18, United States Code, Sections 1114 and 1389(a), against N.S., by posting on Twitter a communication providing N.S.'s restricted personal information to the followers, and any viewers, of Defendant's Twitter account, which communication provided "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . ."

All in violation of Title 18, United States Code, Sections 119 and 2.

(R. 30, Superseding Indictment, PageID 195-99).

Counts 4 through 9 of the Superseding Indictment, and the incorporating paragraphs identified in each Count: (1) provide notice of the approximate dates on which Defendant violated each statute—"September 29, 2015"—as well as a date range of much of his overall conduct—"[f]rom at least on or about May 11, 2014, through on or about October 3, 2015"; (2) identifies Defendant as well as his victims—A.B., W.T., and N.S., "members of the United States uniformed services"; (3) alleges that the scienter requirement was met as to each violation; (4) identifies the type of solicitation, threat, intimidation/incitement/facilitation Defendant intended; and (5) alleges specifies about each individual solicitation, threat, intimidation/ incitement/facilitation enumerated in the statute.

As to the specifics about the September 29, 2015 solicitations, threats, and intimidations/ incitements/facilitations, the Superseding Indictment clearly sets out with sufficient specificity why the post violates these three statutes. Defendant's communications "included the photographs of [all three of the] United States military personnel, A.B. and W.T. [and N.S.], along with their respective names, military divisions, and purported home addresses. The post[s] [were] publically available." (R. 30, Superseding Indictment, PageID 191). Defendant's communication read, in part, "@_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . .,"

Defendant's solicitations, threats, intimidations/incitements/facilitations are explicit, and the context of Defendant's posts provides circumstances that even more strongly corroborate his intent. One critical difference is that Defendant's solicitations contained the directive of "Wanted to kill New Name," in the same communication where he provided the servicemen's personal information. Compared to White's provision of the juror's address, which required a

reader to infer a solicitation based on previous postings, Defendant made no mistake about what he wanted done to the servicemen: he wanted them killed.

As in White II, the context of Defendant's previous posts set forth in the Superseding Indictment further establish his intent. His postings on Facebook, Twitter, and Tumblr begin on May 11, 2014, when he posted, "I can't wait for another 9/11, Boston bombing, or Sandy Hook!!!" and built to the September 24, 2015 posting, September 29, 2015 postings, and the October 3, 2015 postings. Additional posts are described in detail above.

The non-exclusive, non-conclusive list of five circumstances described in White II also strongly corroborate Defendant's intent. For the same reasons stated above with respect to Defendant's September 24, 2015 Tumblr, incorporated herein, which was also incorporated into Counts 4 through 9, all five circumstances were met. When the Superseding indictment is "read as a whole," Defendant intended the three new victim servicemen names to be added to the hit list of the first 100 victims posted on September 24, 2015, only five days earlier, when he communicated through a retweet that these were "New Name[s]" "Wanted to kill." Moreover, the message is a "RT," or retweet, from a user named "cyber_caliphat." (R. 30, Superseding Indictment, PageID 191). "[C]onstruing [this] allegation[] in a practical sense with all the necessary implications," as the Court is required to do, implies the directive originated with the cyber division of the Islamic State. A solicitee and Islamic State supporter carrying out the killing of the servicemen would receive the perceived benefit attendant to killing for the Islamic State.

For the same reasons provided above, the Superseding Indictment presents a sufficient basis to establish the elements of violations of 18 U.S.C. §§ 875, 119, and 2. The Motion as to Counts 4 through 9, therefore, should be denied without a hearing.

iii.      October 3, 2015 Twitter and Tumblr Posts – Counts 10 through 15

On October 3, 2015, in two separate postings, Defendant communicated on his Twitter and Tumblr pages the name, photograph, home address, and branch of the military of R.O. a U.S. serviceman, with the designation of R.O. as "a number one target" for "brothers & to Al Qaeda in the U.S" and "#RunRobertRun." (R. 30, Superseding Indictment, PageID 192). Counts 10 through 15 provide, in pertinent part, the following:

COUNT 10
(October 3, 2015 Twitter Threat in violation of 18 U.S.C. §§ 875(c) and 2)

On or about October 3, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly and willfully did transmit in interstate and foreign commerce from Akron, Ohio, to the State of California, and to other states and countries, a communication providing the name, home address, and branch of the military of R.O. to the followers, and any viewers, of Defendant's Twitter account, and the communication contained a threat to injure R.O., including, among others, "Released – Address of the US Navy Seal [R.O.] who killed Sheikh Osama Bin Laden R.A. - #GoForth #RunRobertRun. . . . I am posting the address to brothers & to Al Qaeda in the U.S. as a number one target."

All in violation of Title 18, United States Code, Sections 875(c) and 2.

COUNT 11
(October 3, 2015 Twitter Solicitation in violation of 18 U.S.C. §§ 373(a) and 2)

On or about October 3, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, with the intent that other persons engage in conduct constituting a felony that has as an element the use and attempted use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce and endeavor to persuade such other persons to engage in such conduct, to wit: to kill and attempt to kill an officer and employee of the United States while such officer and employee was engaged in and on account of the performance of official duties; that is R.O., a member of the United States uniformed services, in violation of Title 18, United States Code, Section 1114, and to knowingly assault and batter R.O., a United States serviceman, on account of the military service of the serviceman and status of the individual as a United States serviceman, in violation of Title 18, United States Code, Section 1389(a).

All in violation of Title 18, United States Code, Section 373(a) and 2.

## COUNT 12
(October 3, 2015 Twitter Post in violation of 18 U.S.C. §§ 119 and 2)

On or about October 3, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly made restricted personal information about R.O., an individual designated in Title 18, United States Code, Section 1114, publically available, with the intent to threaten, intimidate, and incite, and with knowledge that the restricted personal information would be used to threaten, intimidate, and facilitate, the commission of a crime of violence as defined in Title 18, United States Code, Section 16(a), specifically the crimes of violence set forth in Title 18, United States Code, Sections 1114 and 1389(a), against R.O., by posting a communication providing R.O.'s restricted personal information to the followers, and any viewers, of Defendant's Twitter account, which communication provided "Released – Address of the US Navy Seal [R.O.] who killed Sheikh Osama Bin Laden R.A. - #GoForth #RunRobertRun. . . . I am posting the address to brothers & to Al Qaeda in the U.S. as a number one target."

All in violation of Title 18, United States Code, Sections 119 and 2.

## COUNT 13
(October 3, 2015 Tumblr Threat in violation of 18 U.S.C. §§ 875(c) and 2)

On or about October 3, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly and willfully did transmit in interstate and foreign commerce from Akron, Ohio, to the State of New York, and to other states and countries, a communication providing the name, home address, and branch of the military of R.O. to the followers, and any viewers, of Defendant's Tumblr account, and the communication contained a threat to injure R.O., including, among others, "Released – Address of the US Navy Seal [R.O.] who killed Sheikh Osama Bin Laden R.A. - #GoForth #RunRobertRun. . . . I am posting the address to brothers & to Al Qaeda in the U.S. as a number one target," and "don't let this kafir sleep peacefully."

All in violation of Title 18, United States Code, Sections 875(c) and 2.

## COUNT 14
(October 3, 2015 Tumblr Solicitation in violation of 18 U.S.C. §§ 373(a) and 2)

On or about October 3, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, with the intent that other persons engage in conduct constituting a felony that has as an element the use and attempted use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that

intent, did solicit, command, induce and endeavor to persuade such other persons to engage in such conduct, to wit: to kill and attempt to kill an officer and employee of the United States while such officer and employee was engaged in and on account of the performance of official duties; that is R.O., a member of the United States uniformed services, in violation of Title 18, United States Code, Section 1114, and to knowingly assault and batter R.O., a United States serviceman, on account of the military service of the serviceman and status of the individual as a United States serviceman, in violation of Title 18, United States Code, Section 1389(a).

All in violation of Title 18, United States Code, Section 373(a) and 2.

<u>COUNT 15</u>
(October 3, 2015 Tumblr Post in violation of 18 U.S.C. §§ 119 and 2)

On or about October 3, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TERRENCE JOSEPH McNEIL, knowingly made restricted personal information about R.O., an individual designated in Title 18, United States Code, Section 1114, publically available, with the intent to threaten, intimidate, and incite, and with knowledge that the restricted personal information would be used to threaten, intimidate, and facilitate, the commission of a crime of violence as defined in Title 18, United States Code, Section 16(a), specifically the crimes of violence set forth in Title 18, United States Code, Sections 1114 and 1389(a), against R.O., by posting a communication providing R.O.'s personal restricted information to the followers, and any viewers, of Defendant's Tumblr account, which communication provided "Released – Address of the US Navy Seal [R.O.] who killed Sheikh Osama Bin Laden R.A. - #GoForth #RunRobertRun. . . . I am posting the address to brothers & to Al Qaeda in the U.S. as a number one target," and "don't let this kafir sleep peacefully."

All in violation of Title 18, United States Code, Sections 119 and 2.

(R. 30, Superseding Indictment, PageID 199-203).

Counts 10 through 15 of the Superseding Indictment, and the incorporating paragraphs

identified in each Count: (1) provide notice of the approximate dates on which Defendant

violated each statute—"October 3, 2015"—as well as a date range of much of his overall

conduct—"[f]rom at least on or about May 11, 2014, through on or about October 3, 2015";

(2) identifies Defendant as well as his victim—R.O., "a member of the United States uniformed

services"; (3) alleges that the scienter requirement was met as to each violation; (4) identifies the

type of solicitation, threat, intimidation/incitement/facilitation Defendant intended; and (5) alleges specifies about each individual solicitation, threat, intimidation/ incitement/facilitation enumerated in the statute.

As to the specifics about the October 3, 2015 solicitation, threat, and intimidation/ incitement/facilitation, the Superseding Indictment clearly sets out with sufficient specificity why the posts violate these three statutes. Defendant's communication "provide[d] '. . . the address of the US Navy Seal who killed Sheikh Osama Bin Laden R.A.' Beneath the text was listed R.O.'s purported home address and a link to R.O.'s purported photograph." (R. 30, Superseding Indictment, PageID 192). Defendant's communications read, in part:

> On or about October 3, 2015, Defendant posted on his Twitter account, "Released – Address of the US Navy Seal [R.O.] who killed Sheikh Osama Bin Laden R.A. - #GoForth #RunRobertRun." The post was publically available. Defendant included in his post an embedded link that when clicked revealed the following:

> At the top of the page, the link stated "Breaking News" and claimed to provide ". . . the address of the US Navy Seal who killed Sheikh Osama Bin Laden R.A." Beneath the text was listed R.O.'s purported home address and a link to R.O.'s purported photograph.

> Defendant's link further stated that R.O "is a mummy's boy who has been trying to hide yet still lives with his father . . . and mother. . . . In between going around America to conferences boasting at how his 'claim to fame' is killing Sheikh Osama Bin Laden R.A. . . . I am posting the address to brothers & to Al Qaeda in the U.S as a number one target."

> On or about October 3, 2015, Defendant posted the content regarding R.O. and his purported home address and photograph from the embedded link described above onto Defendant's Tumblr page. The post was publically available. Defendant added the statement, "don't let this kafir sleep peacefully," to his Tumblr post.

(R. 30, Superseding Indictment, PageID 192).

Defendant's conduct is far more explicit than in the White case, and the context of Defendant's communications provide circumstances that even more strongly corroborate his intent. One critical difference is that Defendant's communications contained the designation of

R.O. as "a number one target" for "brothers & to Al Qaeda in the U.S" and the threat of "#RunRobertRun" and directive "don't let this kafir sleep peacefully" in the same communication where he provided R.O.'s personal information. Compared to White's provision of the juror's address, which required a reader to infer a solicitation based on previous postings, Defendant made no mistake about what he wanted done to R.O.: targeted, and placed in fear for his life.

As in White II, the context of Defendant's previous posts set forth in the Superseding Indictment further establish his intent. His postings on Facebook, Twitter, and Tumblr begin on May 11, 2014, when he posted, "I can't wait for another 9/11, Boston bombing, or Sandy Hook!!!" and built to the September 24, 2015 posting, September 29, 2015 postings, and the October 3, 2015 postings. Additional posts are described in detail above.

The non-exclusive, non-conclusive list of five circumstances described in White II also strongly corroborate Defendant's intent. First, as in White's posting about the juror, Defendant attempted to make R.O. appear as loathsome as possible. Defendant referred to R.O. as the "number one target" that killed "Shiekh Osama Bin Laden R.A.," a revered and beloved figure to violent jihadists, particularly to members and supporters of al-Qaeda and other foreign terrorist organizations. The perceived benefits showered on the jihadist who would murder R.O. would be incalculable from Defendant's perspective. A solicitee and Islamic State/Al Qaeda "brother" carrying out the killing of R.O. would receive the perceived benefit and praise attendant to carrying out an attack for the Islamic State.

Second, when "read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications," the implication of not "target[ing]" the "US Navy Seal who killed Sheikh Osama Bin Laden" would result in the

consequences for failing to execute the directive; a doctrine that Defendant previously opined on when he stated "On or about February 3, 2015, Defendant posted, 'This is what happens when you bomb women and children and get caught. Alhumdullilah I was worried for a while they might let that murderer go.' Defendant attached to his post three pictures of a Jordanian pilot who was burned to death by ISIL fighters. The pictures were of the pilot before, during, and after his death, showing the pilot engulfed in flames." (R. 30, Superseding Indictment, PageID 189).

Third, the repeated nature of the R.O. conduct strongly corroborates Defendant's intent. As with the previous posts, the R.O. posts were available to Defendant's followers on Twitter and Tumblr, as well as anyone who visited his Twitter and Tumblr pages. They are communications that were, and could have been, reviewed repeatedly. Moreover, to ensure that his R.O. solicitations reached the maximum number of solicitees, Defendant did not merely retweet the solicitation, threat, and intimidation. He took the extra step of posting it again onto his Tumblr page. Defendant further added, in his own words, the directive on his Tumblr feed, "don't let this kafir sleep peacefully," to express his seriousness, his awareness of the threatening nature of the post, and to intimidate/incite/facilitate the commission of a crime against R.O. (Id. at PageID 189).

The fourth and fifth indicators detailed in the analysis provided for the September 2015 postings applies equally to the R.O. solicitations.

For the same reasons provided above, the Superseding Indictment presents a sufficient basis to establish the elements of violations of 18 U.S.C. §§ 875, 119, and 2. The Motion as to Counts 10 through 15, therefore, should be denied without a hearing.

IV.     CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny

Defendant's Motion without a hearing.


                                        Respectfully submitted,

                                        CAROLE S. RENDON
                                        United States Attorney

                              By:    /s/ Christos N. Georgalis
                                        Christos N. Georgalis (OH: 0079433)
                                        Assistant United States Attorney
                                        United States Court House
                                        801 West Superior Avenue, Suite 400
                                        Cleveland, OH 44113
                                        (216) 622-3971
                                        (216) 522-2403 (facsimile)
                                        Chris.Georgalis@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of December 2016 a copy of the foregoing

document was filed electronically.  Notice of this filing will be sent to all parties by operation of

the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.

Parties may access this filing through the Court's system.

/s/ Christos N. Georgalis
Christos N. Georgalis
Assistant U.S. Attorney