IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NO. 5:15CR446 |
| Plaintiff | * | |
| -vs- | * | JUDGE DAN A. POLSTER |
| TERRENCE JOSEPH McNEIL | * | |
| Defendant | * | DEFENDANT TERRENCE McNEIL'S SENTENCING MEMORANDUM |
| * * * | | |

Now comes the Defendant, TERRENCE JOSEPH McNEIL, by and through undersigned counsel, and hereby submits his sentencing memorandum in support of a reasonable sentence that takes into account consideration of the factors under 18 U.S.C. § 3553(a) in the instant case. Mr. McNeil respectfully submits, that in taking all of those factors into account, this Court should sentence him within the agreed upon sentencing range of 15 – 20 years (180 – 240 months). It is further Mr. McNeil's position that this Court should sentence him to a term of 15 years (180 months), which would be sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)(2).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court transferred the sentencing guidelines from a mandatory scheme to an advisory resource. Post *Booker*, the sentencing court must consider the other factors listed in 18 U.S.C. § 3553(a) as well as the applicable advisory guideline range.

The § 3553(a) factors are well-known to the Court but are recounted here:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –

1

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) the advisory Guideline range;
  (5) any pertinent policy statements issued by the Sentencing Commission;
  (6) the need to avoid unwarranted sentence disparities; and
  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Supreme Court has stated, on more than one occasion, that a sentencing court may, through the consideration of the § 3553(a) factors, tailor the sentence to the individual defendant. See, e.g. *Pepper v. United States*, 131 S.Ct. 1229, 1241 (2011); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007).

Moreover, the court is required to follow the decree contained at the outset of § 3553(a). This provision mandates that the court impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). Thus, the court's task is to consider the seven listed factors contained in § 3553(a) and then to employ these considerations in arriving at a sentence that is sufficient but not greater than necessary to accomplish the purpose of sentencing listed in § 3553(a)(2).

  I.      <u>Plea Agreement</u>

On April 18, 2017, Mr. McNeil entered a plea of guilty in this case to counts one, two, four, five, seven, eight, ten, eleven, thirteen and fourteen. The remaining counts in the indictment are to be dismissed on the date of sentencing. Pursuant to the Plea Agreement, and "[p]ursuant to Criminal Rule 11(c)(1)(C), and after considering the factors in 18 U.S.C. § 3553(a), the parties agree that the appropriate disposition of this case is for Defendant to receive

a sentence that includes a specific sentence to a total term of imprisonment of at least 15 years, but not greater than 20 years of imprisonment." (R. 90, Plea Agreement, PageID #778).

    II.    <u>Nature and Circumstances of the Offense and the History and Characteristics of Mr. McNeil.</u>

        A.  <u>The History and Characteristics of Mr. McNeil</u>

Mr. McNeil is 24 years old. He was born in Valhalla, New York. His parents were never married and he never lived with them together. Mr. McNeil's father was not involved in his childrearing and throughout his life they have had limited contact. He was raised by his mother and maternal grandmother in Peekskill, NY. His mother has never married and he has no siblings on his mother's side of the family. Mr. McNeil attended and graduated from Hastings High School in New York. After graduating Mr. McNeil attended two separate colleges, one semester at Westchester Community College and one semester at Clinton Community College. After Mr. McNeil's grandmother passed away approximately 3 years ago Mr. McNeil and his mother moved to Ohio in October 2014. While Mr. McNeil enjoys working with computers his goal was to obtain a medical related degree. After moving to Ohio, Mr. McNeil obtained employment with Summa Health System.

Mr. McNeil has no criminal history. Prior to this case he had never even been arrested. According to his mom, Mr. McNeil enjoyed taking pictures of the outdoors and he liked to read. Mr. McNeil is a devoted son to his mother. As noted in the PSR, the only relationship he currently has is with his mother stating, "she is all I have." While he was living with his mom in Akron and working, he contributed to the household expenses, respected his mother and assisted her with everything he could. As Mr. McNeil's is interested in cooking also, he enjoyed doing to

3

the cooking for him and his mom. On his off days, he enjoyed walking through the Metro Parks and taking pictures of the outdoors.

        B.   <u>Nature and Circumstances of the Offense</u>

There is no doubt that the offense committed by Mr. McNeil is a serious one. Mr. McNeil sent out reposts and retweets on five separate occasions containing information about U.S. Military men and women and their addresses. Further, the reposts and retweets contained information advising others to murder U.S. Military men and women. Additionally, there are a number of other postings from Mr. McNeil as set forth in the factual statement of the Plea Agreement.

In fashioning a reasonable sentence in this case, Mr. McNeil urges this Court to take into consideration that in this case, he did not take part in a specific plot against the United States and there is no evidence to suggest that he was especially useful to any foreign organization. While Mr. McNeil recognizes the seriousness of his conduct, it is important to remember that while his posts, tweets and reposts could be seen by anyone, he himself never left Akron, Ohio. Every day, he got up, rode the bus to work at Summa Health, did his job and returned home.

   III.   <u>Need to Avoid Unwarranted Sentencing Disparities</u>

Mr. McNeil acknowledges that the offenses committed by him are serious. As mentioned above, this Court has, pursuant to the Plea Agreement, the option of sentencing Mr. McNeil to as little as 15 years to a maxim of 20 years, or 180 months to 240 months. Over the past several years, there have been a number of cases wherein the defendants have been convicted of offenses related to terrorism organizations which involved conduct much more egregious, severe and threatening than in the instant case. The following is a sample of where the courts imposed sentences of 180-month as follows.

1. Abdinassir Ibrahim – 180 Months Imprisonment

In *USA v. Abdinassir Ibrahim*, 14CR99 (W.D. Texas) (2015), the defendant pled guilty to 18 U.S.C. § 2332(B) and 18 U.S.C. § 1546(a).  Ibrahim admitted that from about May 18, 2010, to about January 31, 2014, he knowingly conspired to provide material support and resources, specifically sending emails from the US enlisting support to al-Shabaab and making a cash payment to a known member of al-Shabaab for the benefit of the organization.  Ibrahim knew at the time that al-Shabaab was designated by the United States as a foreign terrorist organization.  Ibrahim also pleaded guilty to making a false statement in an immigration matter.

2. Wesam Hanafi – 180 Months Imprisonment

In *United States v. Wesam Hanafi*, 12CR162 (S.D.N.Y.) (2015), the defendant pled guilty to 18 U.S.C. § 2339(B) and 18 U.S.C. § 371.  Beginning in 2007, Hanafi and Hasanoff conspired with others to support and receive assignments from al-Qaeda.  In November 2007, Hasanoff received approximately $50,000 from a co-conspirator ("CC-1"), with the understanding that a portion of the money would be used to support the terrorist organization.  In February 2008, Hanafi travelled to Yemen to meet with two members of al-Qaeda.  While in Yemen, Hanafi swore an oath of allegiance to al-Qaeda, received instructions from al-Qaeda on operational security measures, and received assignments to perform for al-Qaeda.  Also, while in Yemen, Hanafi instructed the members of al-Qaeda on how to communicate covertly over the internet in a manner that would avoid law enforcement detection.  After Hanafi returned from Yemen, Hasanoff also swore allegiance to al-Qaeda.  About three months later, In May 2008, Hanafi met with CC-1 in Brooklyn to discuss CC-1 also joining al-Qaeda.  During this same approximate time period, Hanafi purchased a subscription for a software program that enabled him to communicate securely with others over the internet.  Hanafi and Hasanoff also helped finance

the terror group, by regularly sending money to al-Qaeda through international wire transfers and through curriers. Hanafi and Hasanoff also were interested in fighting with al Qaeda in Afghanistan, Iraq, and other locations abroad, and they discussed travelling to engage in jihad, although they never succeeded in participating in armed conflict. In June 2008, Hanafi directed CC-1 to perform various tasks for al-Qaeda. At that time, Hasanoff instructed CC-1 not to use his U.S. passport when traveling because a U.S. passenger with fewer immigration stamps would be more valuable to al-Qaeda. Additionally, in August 2008, Hasanoff traveled to New York City where he performed assignments for al-Qaeda. Hanafi and Hasanoff continued discussions about seeking out more contacts with al-Qaeda through 2009.

    3.   Gufran Ahmed Kauser Mohammed – 180 Months Imprisonment

In *USA v. Gufran Ahmed Kauser Mohammed*, 13CR20364, (S.D. Florida), (2014), the defendant pled guilty to 18 U.S.C. § 2339(B). Mohammed sent a series of wire transfers to co-conspirator Mohamed Hussein Said for the purpose of supporting al-Shabaab, and to an individual whom he believed was a terrorist fundraiser, recruiter, and supplier for the purpose of supporting al-Qaeda and AQI/al-Nusrah Front. In addition, Mohammed agreed to support al-Qaeda and AQI/al-Nusrah Front by recruiting individuals to fight in the conflict in Syria. Mohammed earmarked certain of his financial contributions for the purpose of buying weapons and funding attacks on United States Citizens or the United Nations.

    4.   Patrick Nayyar – 180 Months Imprisonment

In *USA v. Patrick Nayyar*, 09CR1037 (S.D.N.Y.)(2014), the defendant was convicted at trial of violating 18 U.S.C. § 2339(B), 50 U.S.C. § 1705 and 18 U.S.C. § 922(g). Between July of 2009 and September 2009, Nayyar and his co-conspirator, Conrad Stanisclaus Mulholland, agreed to provide weapons, ammunition and vehicles to Hizballah, a U.S. designated foreign

terrorist organization based in Lebanon.  During a series of meetings with a confidential informant working with the Federal Bureau of Investigation, who represented himself as able to deliver materials to Hizballah, Nayyar and Mulholland agreed to sell guns, ammunition, vehicles, bulletproof vests, and night vision goggles to the confidential informant.  During these meetings Nayyar and Mulholland also provided the confidential informant with a handgun, a box of ammunition, and a pick-up truck, believing that the confidential informant would deliver the items to Hizballah in Lebanon.

There were also cases in which the United States District Court sentenced the defendant to a sentence of greater than 180 months.

1. Sabirhan Hasanoff – 216 Months Imprisonment

In *USA v. Sabirhan Hasanoff*, 10CR162 (S.D.N.Y.) (2013), the defendant plead guilty to 18 U.S.C. § 2339(B) and 18 U.S.C. § 371.  Hasanoff was the co-defendant of Wesam Hanafi in the facts set forth above.

2. Basaaly Moalin – 216 Months Imprisonment

In *USA v. Basaaly Moalin*, 10CR4246 (S.D.Cal.) (2013), the defendant was convicted after a trial of 18 U.S.C. § 2339(A), 18 U.S.C. § 2339(B) and 18 U.S.C. § 1956.  Moalin was convicted along with three co-conspirators of a conspiracy to send money from San Diego to Somalia to help al-Shabaab.  Moalin received the longest sentence, according to the United States District Court Judge because Moalin had attempted to not only send money to the group but also to provide a house in Mogadishu to a terrorist leader.

IV. <u>Need For Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect of the Law, and  to Provide Just Punishment for  the Offense.</u>

A sentence of 180 months – 15 years – when considering the cases in sentences cited above would adequately reflect the seriousness of the offense committed in this case.  It would also serve as an effective deterrent to others who might be inclined to commit the crimes of using the internet to solicit and/or threaten U.S. Military personnel.  Finally, a sentence of 180 months would promote respect for the law and the criminal justice system in this country, both on the part of the public and on the part of Mr. McNeil.

A 180-month sentence will be a severe enough punishment for Mr. McNeil, who has never, until now, come into contact with law enforcement in his entire life.  However, such a sentence would be sufficient, but not greater than necessary, to accomplish the purposes of sentencing listed in 18 U.S.C. § 3553(a)(2).

WHEREFORE, Defendant, Terrence Joseph McNeil, respectfully requests that this Court grant his request for a sentence in this case of 180 months.

Respectfully submitted,

*/S/  NATHAN A. RAY*
NATHAN A. RAY #0041570
Attorney for Defendant
137 South Main Street, Suite 201
Akron, Ohio 44308
330-253-7171
330-253-7174 fax
burdon-merlitti@neo.rr.com

PROOF OF SERVICE

    I hereby certify that on July 24, 2017, a copy of the foregoing Defendant McNeil's Sentencing Memorandum was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                                  */S/ NATHAN A. RAY*
                                                  NATHAN A. RAY
                                                  Attorney for Defendant