IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NO. 5:15CR446 |
|     Plaintiff | * | |
| -vs- | * | JUDGE DAN A. POLSTER |
| TERRENCE JOSEPH McNEIL | * | |
| | | DEFENDANT'S SENTENCING |
|     Defendant | * | MEMORANDUM IN SUPPORT OF HIS |
| | | OBJECTIONS TO ENHANCEMENT |
| | * | PURSUANT TO U.S.S.G. § 3A1.4 OF |
| | | THE GUIDELINES |

* * *

Now comes the Defendant, TERRENCE JOSEPH McNEIL, by and through undersigned counsel, and hereby submits his Sentencing Memorandum in support of his objections to any enhancement of the guidelines pursuant to U.S.S.G. § 3A1.4. The basis for this objection is more fully set forth in the below Memorandum.

                                                      Respectfully submitted,

                                                      */S/ NATHAN A. RAY*
                                                      NATHAN A. RAY #0041570
                                                      Attorney for Defendant
                                                      137 South Main Street, Suite 201
                                                      Akron, Ohio 44308
                                                      330-253-7171
                                                      330-253-7174 fax
                                                      burdon-merlitti@neo.rr.com

MEMORANDUM

I.    PROCEDURAL BACKGROUND

On November 12, 2015, Terrence Joseph McNeil, was arrested on a federal criminal complaint for soliciting the crime of violence in violation of Title 18 U.S.C. § 373 (R.1, Complaint Affidavit, PageID #3).  On December 8, 2015, a federal grand jury charged Mr. McNeil in a six-count indictment, setting forth three counts of communicating a threat in interstate commerce, in violation of 18 U.S.C. § 875(c), and three counts of soliciting a crime of violence, in violation of 18 U.S.C. § 373, and aiding and abetting said crimes (R.7, Indictment, PageID #32-40).  On October 13, 2016, a federal grand jury returned a superseding indictment against Mr. McNeil, charging him with fifteen counts, five counts of violating 18 U.S.C. § 875(c), five counts of violating 18 U.S.C. § 373, as well as five additional new counts, of publishing restricted personal information, in violation of 18 U.S.C. § 119, and aiding and abetting such crimes[1] (R.30, Superseding Indictment, PageID #188-203).  On April 4, 2017, a federal grand jury returned a second superseding indictment against Mr. McNeil, in which this indictment deleted any reference to Title 18 U.S.C. § 1389(a) (R. 79, Second Superseding Indictment, PageID #640-655).  On April 18, 2017, Mr. McNeil pled guilty to ten counts of the Second Superseding Indictment, those being counts one, two, four, five, seven, eight, ten, eleven, thirteen and fourteen.  The remaining counts are to be dismissed at the time of sentencing.  Mr. McNeil pled guilty to a Plea Agreement (R. 90, Plea Agreement, PageID #775-799).

The ten counts to which Mr. McNeil plead guilty involve violations of 18 U.S.C. § 875(c)(2) and 18 U.S.C. § 373(a)(2).  A violation of 18 U.S.C. § 875(c), Interstate

---

[1] As set forth in the Superseding Indictment, violations of 18 U.S.C. § 875(c), Counts One, Four, Seven, Ten and Thirteen; violations of 18 U.S.C. § 373, Counts Two, Five, Eight, Eleven and Fourteen; violations of 18 U.S.C. § 119, Counts Three, Six, Nine Twelve and Fifteen.

2

Communications, requires that a person "… transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another…."  18 U.S.C. § 373(a), Solicitation to Commit a Crime of Violence, sets forth that, "Whoever, with intent that another person engage in conduct constituting a felony that has an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces or otherwise endeavors to persuade such other person to engage in such conduct. . .."

As set forth in the second superseding indictment, in the counts pertaining to 18 U.S.C. § 373(a)[2], Mr. McNeil was indicted as follows: "On or about September 24, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant Terrence Joseph McNeil, with the intent that other persons engage in conduct constituting a felony that has as an element the use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce, and endeavor to persuade such other persons to engage in such conduct, to wit: to kill an officer and employee of the United States while such officer and employee was engaged in and on account of the performance of official duties; that is to murder certain members of the United States uniform services, in violation of Title 18 U.S.C. § 1114(1)."  It is a violation of 18 U.S.C. § 1114(1), Protection of Officers and Employees of the United States, when "Whoever kills  or attempts to  kill any officer  or employee of the United States or of any agency in any branch of

---

[2] The counts in the indictment setting forth a violation of Title 18 U.S.C. § 373(a), with the dates of the violation are Count Two, September 24, 2015; Count Five, September 29, 2015; Count Eight, September 29, 2015; Count Eleven, October 3, 2015; Count Fourteen, October 3, 2015. Counts Two, Five, Eight and Eleven each name separate victims.  Counts Eleven and Fourteen name the same victim.

the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance…."

Pursuant to the Plea Agreement to which Mr. McNeil plead guilty, paragraph 15 states that "Defendant understands that the government intends to argue at sentencing that an enhancement under § 3A1.4(a) and (b) applies to Defendant's sentencing guideline computation. Defendant reserves the right to argue against the application of § 3A1.4(a) and (b) at sentencing." (R. 90, Plea Agreement, PageID #780).  Mr. McNeil now submits his memorandum in support of his position that U.S.S.G. § 3A1.4(a) and (b) does not apply to him.

II.     FACTUAL BACKGROUND

The basis for which Mr. McNeil was indicted in the second superseding indictment arose from five specific social media re-posts that Mr. McNeil made in September and October of 2015.  As set forth in the Plea Agreement (R. 90, Plea Agreement, PageID #786-789) they are as follows:

26. On or about September 24, 2015, Defendant posted on his Tumbler account a file that displayed a banner titled, "Islamic State Hacking Division," stretched across the background of the black flag commonly used by ISIL and its supporters.  Beneath the banner was written, "Target: United States Military" and "Leak: Addresses of 100 US Military Personnel."  The file type was a .gif file, which allowed multiple still images to be looped in one file, with a timed delay between each image being displayed.  The file was publicly available.

    a.  The text of the first image read, in part, "O Kuffar in America, O you who worship the cross, O You crusaders that fight the Islamic State, we say to you: 'DIE IN YOUR

4

RAGE,' die in your rage because with the grace of Allah, The Islamic State Hacking Division (ISHD) has hacked several military servers, databases and emails and with all this access we have successfully obtained personal information related to military personnel in the United States Air Force, NAVY and Army . . . . [W]e have decided to leak 100 addresses so that our brothers residing in America can deal with you."

b.  The text of the first image continued: "O Brothers in America, know that the jihad against the crusaders is not limited to the lands of the Khilafah, it is a world-wide jihad and their war is not just a war against the Islamic State, it is a war against Islam . . . . Know that it is wajib for you to kill these kuffar! and now we have made it easy for you by giving you addresses, all you need to do is take the final step, so what are you waiting for? Kill them in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking that they are safe . . .."

c.  The file then looped through several dozen photographs of United States military personnel, along with their respective names, purported home addresses, and military branches. Several of the photographs contained pictures of the military personnel holding infants or young children.

d.  The final image of the loop contained a picture of a handgun and a knife with text that read: ". . . and kill them wherever you find them..."

27. On or about September 29, 2015, Defendant posted on his Twitter account, "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . .," which included the photographs of two United States military personnel, A.B. and W.T., along with their respective names, military divisions, and purported home addresses. The post was publicly available.

5

28. On or about September 29, 2015, Defendant posted on his Twitter account, "RT @_cyber_caliphat: [Arabic writing] Wanted to kill New Name. . . .," which included the photograph of a United States military service member, N.S., alongside two young children, in addition to the military service member's name, military division, and purported home address. The post was publicly available.

29. On or about October 3, 2015, Defendant posted on his Twitter account, "Released – Address of the US Navy Seal [R.O.] who killed Sheikh Osama Bin Laden R.A. - #GoForth #RunRobertRun." The post was publicly available. Defendant included in his post an embedded link that when clicked revealed the following:

    a. At the top of the page, the link stated, "Breaking News" and claimed to provide ". . . the address of the US Navy Seal who killed Sheikh Osama Bin Laden R.A." Beneath the text was listed R.O.'s purported home address and a link to R.O.'s purported photograph.

    b. Defendant's link further stated that R.O. "is a mummy's boy who has been trying to hide yet still lives with his father . . . and mother . . .. In between going around America to conferences boasting at how his 'claim to fame' is killing Sheikh Osama Bin Laden R.A.. . . I am posting the address to brothers & to Al Qaeda in the U.S. as a number one target."

30. On or about October 3, 2015, Defendant posted the content regarding R.O. and his purported home address and photograph from the embedded link described above onto Defendant's Tumblr page. The post was publicly available. Defendant added the statement, "don't let this kafir sleep peacefully," to his Tumblr post.

III.    ANALYSIS

U.S.S.G. § 3A1.4, Terrorism, states: (a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by twelve levels…; (b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be category VI. The term "federal crime of terrorism" as used in § 3A1.4 "has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." *See*, U.S.S.G. § 3A1.4 cmt. n.1. Pursuant to § 2332b(g)(5), an offense qualifies as a federal crime of terrorism if two separate requirements are met. First, the offense is a violation of one or more enumerated statutory provisions and secondly, the offense "is calculated to influence or affect conduct of government by intimidation or coercion, or to retaliate against government conduct." *See*, 18 U.S.C. § 2332b(g)(5)(A), (B).

In *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001), the Sixth Circuit addressed the applicability of § 3A1.4. The district court had applied § 3A1.4 to the facts of that case even though Graham had not been convicted of one of the enumerated statutory provisions. The facts were that Graham was a member of a local militia organization which was planning to attack government targets on an unspecified future date. Graham also grew and sold marijuana, part of the proceeds of which he used to help pay for weapons acquisitions related to his militia activity.

The Sixth Circuit noted that under the statute, "the term 'Federal crime of terrorism' is defined in the conjunctive: it is 'an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct,' 18 U.S.C. § 2332b(g)(5)(A), *and* is a violation of one of the enumerated statutory provisions provided in § 2332b(g)(5)(B)." *Id*. at 514 (emphasis in original). The *Graham* Court noted its first task was to

7

determine whether § 3A1.4 may be applied to a sentence for conviction of the general conspiracy statute, which is not mentioned in § 2332(b)(g)(5)(B).  Graham was charged with conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371.  The indictment alleged that Graham had threatened to assault and murder federal officers, as designated in 18 U.S.C. § 1114, with the intent to impede, intimidate, and interfere with these officers while engaged in the performance of official duties, in violation of 18 U.S.C. § 115(a)(1)(B).  At sentencing the district court determined that there were several enumerated offenses listed in § 2332b(g)(5)(B) as relevant to its sentencing determination, which included § 1114.  The district court then determined that the facts from the trial demonstrated that Graham's participation in the § 371 conspiracy was intended to promote "the above-mentioned crimes of terrorism listed in the statute." *Id*. at 515.  In upholding the district court's decision, the Sixth Circuit stated that, "…the defendant need not have been convicted of a federal crime of terrorism as defined in § 2332b(g)(5) for the district court to find that he intended his substantive offense of conviction or his relevant conduct to promote such a terrorism crime.  In sentencing the defendant under § 3A1.4, we hold that the district court must, however, identify which enumerated 'Federal crime of terrorism' the defendant intended to promote, satisfy the elements of § 2332b(g)(5)(A), and support its conclusions by a preponderance of the evidence with facts from the record." *Id*. at 517.

     Here, Mr. McNeil pled guilty to 18 U.S.C. § 875(c) and 18 U.S.C. § 373.  Neither of these statutes are listed in 18 U.S.C. § 2332(b)(g)(5)(B).  As such Mr. McNeil's actions did not "involve" a federal crime of terrorism.  In *U.S. v. Parr*, 545 F.3d 491 (7th Cir.2008), the Court found that the term "'involve' as used in the guidelines is not quite so broad; it means 'to include.' *United States v. Arnaout,* 431 F.3d 994, 1001 (7th Cir.2005) (citing *United States v.*

8

*Graham,* 275 F.3d 490, 516 (6th Cir.2001)). Thus, we have held that an offense 'involves' a federal crime of terrorism only if the crime of conviction is itself a federal crime of terrorism. *Id.* On this understanding, if Parr's crime—the threat—was not itself a federal crime of terrorism as defined in § 2332b(g)(5)(A) *and* (B) (and the district court found that it was not), then the offense did not 'involve' a federal crime of terrorism."

Thus, if the terrorism enhancement is going to apply in Mr. McNeil's case, it must be under the second basis, or "if the offense . . . was intended to promote a federal crime of terrorism." U.S.S.G § 3A1.4(a). In *Graham*, the defendant was actively involved in a militia which researched and actively sought out targets in that he "reconned" his assigned region, meaning he visited his assigned attack area and surveyed his targets. When they arrested the defendant, the agents seized "machineguns; loaded semi-automatic assault rifles and thousands of rounds of ammunition; assault rifles; thirty pounds of smokeless gun powder; silencers; several feet of time fuse; four grenade hulls and a live grenade fuse; flare and tear gas launchers; and military combat equipment including flak vests, helmets, and gas masks." *Graham*, supra at 499. Thus, in *Graham,* the factual background the district court found, and the court of appeals affirmed, established that the defendants conduct in the § 371 conspiracy was "intended to promote" a federal crime of terrorism.

In Mr. McNeil's case, the factual background does not support such a finding. Set forth above is the factual background to which Mr. McNeil pled guilty. There were five separate posting which form the basis of the counts set forth in the indictment. These posting did not originate with Mr. McNeil, rather they were sent to him and he reposted them on his social media accounts. All of Mr. McNeil's contacts were by social media. Any statements that he made would have been shared via social media. In the Plea Agreement is a list of statements and

9

images that he posted on social media (R. 90, Plea Agreement, PageID #783-786, 788).  And while these were shared with individuals of like mind, he never went beyond his electronic devices to share his statements.  At the time of Mr. McNeil's arrest, the FBI also conducted a search of his home.  They confiscated items which included a laptop, external hard drive, other electronic devices, camera, a book entitled Milestones and Mr. McNeil's wallet in which was located a small handmade black and white Islamic State flag.

Mr. McNeil recognizes the seriousness of the offenses committed.  But his position is that the facts of his case do not establish by a preponderance of the evidence that his actions promoted terrorism.  An example of where a court has not found an act of the defendant to be an act of terrorism was in *United States v. Arnaout*, 431 F.3d 994 (7th Cir.2005).  There the district court determined that § 3A1.4 did not apply in a case where the defendant raised funds for a charity he operated allegedly for humanitarian purposes, but then diverted a portion of the money raised to support groups engaged in armed confrontation and violence overseas.  The portion of the amount raised attributable to Arnaout was approximately $300,000.  While the district court failed to properly consider whether Arnaout's conviction promoted a federal crime of terrorism, the district court did find on the record that that government did not "establish by a preponderance of the evidence that Arnaout attempted, participated in, or conspired to commit any act of terrorism." *Id*. at 1002.  Thus, the Seventh Circuit found that not applying § 3A1.4 to Arnaout's case was not error. *Id.*

In a case such as Mr. McNeil's, where he was not convicted of a crime of terrorism as set forth in § 2332b(g)(5)(B), a court must, once it identifies which crime of terrorism a defendant intended to promote, turn its attention to § 2332b(g)(5)(A).  As noted in *United States v. Fidse*, Docket No. 16-50250 (7th Cir.2017, decided July 7, 2017), "[i]n cases such as this one, in which

10

the defendant was not actually convicted of a federal crime of terrorism or the defendant's relevant conduct did not include such a crime, a district court must: (1) "identify which enumerated federal crime of terrorism the defendant intended to promote"; (2) "satisfy the elements of § 2332b(g)(5)(A)," which requires that the offense be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct"; and (3) "support its conclusions by a preponderance of the evidence with facts from the record." *Arnaout*, 431 F.3d at 1002; accord *Fidse I*, 778 F.3d at 481." It is Mr. McNeil's position that his conduct does not satisfy the requirements of § 2332b(g)(5)(A).

In *United States v. Wright*, 747 F.3d 399 (2014), the Sixth Circuit addressed the phrase "calculated to influence or affect the conduct of government." The Court looked to other circuits who have interpreted § 2332b(g)(5)(A) and found that they had determined it imposed a specific intent requirement, which the *Wright* court adopted.[3] The Wright court noted that, "[a] defendant has the requisite intent if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind. Long-term planning, however, is not required. Nor is it necessary that influencing the government be the defendant's ultimate or sole aim." *Wright* at 408 (citations omitted). Examples the *Wright* court looked to of where other circuits have upheld the terrorism enhancement include defendants who sought to bomb or otherwise violently target government facilities[4], and a defendant who plotted to destroy electrical substations "in the hopes that power outages would lead to civil strife" and

---

[3] *United States v. Hassan*, 742 F.3d 104, 148-49 (4th Cir. 2014); *United States v. Siddiqui*, 699 F.3d 690, 709 (2nd Cir. 2012); *United States v. Chandia*, 375 F.Appx. 53, 54, 60 (4th Cir. 2010); *United States v. Stewart*, 590 F.3d 93, 138 (2nd Cir. 2009).
[4] *United States v. McDavid*, 396 Fed.Appx. 365 (9th Cir. 2010); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2nd Cir.2008); *United States v. Tubb*, 290 Fed.Appx. 66 (9th Cir.2008).

11

enable him to demand changes to national foreign policy. *United States v. Mandhai*, 375 F.3d 1243, 1248 (11th Cir.2004).  The *Wright* court looked to the actions of the defendants therein to determine that the district court had properly applied the terrorism enhancement.  These factors included the defendants expressing an interest in obtaining explosives, expressing an interest in beating up cops at protests and arranging to purchase gas masks, retractable batons, and canisters of tear gas at protests, and participated in a conversation which was recorded wherein the defendants discussed the feasibility of using explosives in or immediately outside government buildings. *Wright,* at 409.

   The five reposts that McNeil sent out contained the names and addresses of military personal.  This affected not only those individuals in the military but also their families by the release of this information.  The posts called for the death of military members by stating "Know that it is wajib for you to kill these kuffar! and now we have made it easy for you by giving you addresses, all you need to do is take the final step, so what are you waiting for?  Kill them in their own lands, behead them in their own homes, stab them to death as they walk their streets thinking that they are safe . . .."  Some examples of Mr. McNeil's own posts included such statements as "I would gladly take part in an attack on this murderous regime and the people [sic]; I'll be proud when I sled [sic] american blood; lmao I don't  support Egyptian idols if you mean the Islamic State I have stated many times that I do support them; May Allah hasten the destruction of  the terrorist state of  America and all their allies; Being Muslim, black, and native american in the US, I feel like it's my duty to burn America."  But unlike other cases which have been reviewed, Mr. McNeil never did more than post or repost.  His entire criminal offense was committed online.  And that in no way diminishes the seriousness of the offenses to which he

pled guilty. But it supports his position that his conduct was not "calculated to influence or affect the conduct of government."

*Wright* recognized that § 2332b(5)(A) imposes a specific intent requirement for it to apply. A defendant has to act with the purpose of influencing or affecting the conduct of government. As set forth above, examples of where it applies include defendants who sought to bomb or otherwise violently target government facilities. Those cases reviewed which have addressed the issue as to whether § 3A1.4 applies, have all involved some form of activities by the defendants other than social media postings. Here, when taking into consideration all of the factors present in Mr. McNeil's case, including that his conduct never went beyond social media, he sets forth for the court that § 3A1.4 does not apply.

IV. CONCLUSION

For the foregoing reasons, Mr. McNeil respectfully requests that this Court find that § 3A1.4 of the United States Sentencing guidelines does not apply to his case.

> */S/ NATHAN A. RAY*
> NATHAN A. RAY
> Attorney for Defendant

PROOF OF SERVICE

I hereby certify that on July 24, 2017, a copy of the foregoing Defendant's Sentencing Memorandum in Support of his Objections to Enhancement Pursuant to U.S.S.G. § 3A1.4 of the Guidelines was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

> */S/ NATHAN A. RAY*
> NATHAN A. RAY
> Attorney for Defendant